## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

**EDDIE J. LOGAN, III**                                          **CIVIL ACTION**

**VERSUS**                                                       **CASE NO. 24-380**

**NEW ORLEANS PUBLIC BELT RAILROAD**                             **SECTION: "G"(2)**
**COMMISSION FOR THE PORT OF NEW**
**ORLEANS, et al.**

### ORDER AND REASONS

Before the Court are two motions filed by Defendant The New Orleans Public Belt Railroad Commission for the Port of New Orleans' (the "NOPB"): (1) a Motion for Summary Judgment[1] and (2) Motion in Limine to Exclude Medical Causation Testimony.[2] NOPB seeks summary judgment in its favor, contingent upon the exclusion of Plaintiff Eddie J. Logan, III's ("Plaintiff") proposed medical causation testimony. For the reasons stated herein, the Court grants in part and denies in part NOPB's Motion in Limine and denies NOPB's Motion for Summary Judgment.

### I. Background

On February 12, 2024, Plaintiff filed a Complaint in this Court against Defendants New Orleans Public Belt Railroad Commission for the Port of New Orleans, New Orleans Public Belt Railroad Corporation, and Public Belt Railroad Commission for the City of New Orleans (collectively "Defendants").[3] In 2002, Plaintiff was employed with Defendants as a

---

[1] Rec. Doc. 48.

[2] Rec. Doc. 47.

[3] Rec. Doc. 1.

switchman/conductor and was assigned to work on tracks and equipment owned and operated by Defendants.[4] The Complaint states that Plaintiff's rights and remedies against Defendants arise under the Federal Employers' Liability Act ("FELA").[5] The Complaint alleges that during Plaintiff's career with Defendants, Plaintiff was regularly exposed to unsafe work conditions which took toll on his feet.[6] Plaintiff explains that he was required to walk in rail yards for miles with oversized and unstable main line ballast present, line switches, and adjust poorly maintained and inadequately lubricated couplers, drawbars, and knuckles, amongst other tasks.[7]

The Complaint alleges that reporting work-related injuries were "frowned upon" and "laughed at."[8] Plaintiff states that, as a result of Defendants' negligence, Plaintiff has suffered occupational injuries to his feet which have caused him to undergo extensive medical evaluation and treatment, including plantar fasciotomy surgeries, prescribed medication, and extensive physical therapy, from which Plaintiff will have permanent sensitivity in the areas of the surgical sites.[9] Plaintiff avers that his injuries were caused by, contributed to, or aggravated by exposed to excessive and harmful cumulative trauma, repetitive stress, force, and/or vibration to his body and feet.[10] Plaintiff seeks damages for physical pain and suffering, mental anguish, disfigurement, loss of enjoyment of life, loss wages and earning capacity, and unpaid medical expenses.[11]

---

[4] *Id.* at 3.

[5] 45 U.S.C. § 51, *et seq.*

[6] Rec. Doc. 1 at 5.

[7] *Id.*

[8] *Id.* at 6.

[9] *Id.*

[10] *Id.* at 7.

[11] *Id.* at 11–12.

On July 5, 2024, the Court dismissed the claims against the New Orleans Public Belt Railroad Corporation and the Public Belt Railroad Commission for the City of New Orleans.[12] Therefore, only the claims against NOPB remain pending.

On November 25, 2025, NOPB filed the instant motions.[13] On December 9, 2025, Plaintiff filed a response to both motions.[14] On December 15, 2025, NOPB filed reply memoranda in further support of the motions.[15]

## II. Parties' Arguments

### A.    *Motion in Limine*

#### 1.    NOPB's Arguments in Support of the Motion

NOPB seeks to exclude the opinions and testimony of Plaintiff's treating physicians and non-retained expert witnesses, Dr. Robert Treuting and Dr. Carmen Bruno, under Federal Rule of Civil Procedure 37(c) and Federal Rule of Evidence 702.[16] NOPB explains that Plaintiff provided summaries of the anticipated testimony of his treating physicians, but these disclosures are deficient because Plaintiff was required to produce written expert reports.[17]

NOPB explains that Plaintiff must introduce expert testimony to prove medical causation, an essential element of his FELA claim.[18] NOPB argues that Dr. Treuting and Dr. Bruno should have produced expert reports and materials as required of retained expert witnesses under Federal

---

[12] Rec. Doc. 15.

[13] Rec. Doc. 47; Rec. Doc. 48.

[14] Rec. Doc. 54; Rec. Doc. 55.

[15] Rec. Doc. 60; Rec. Doc. 61.

[16] Rec. Doc. 47.

[17] Rec. Doc. 47-1 at 5.

[18] *Id.* at 6.

Rule of Civil Procedure 26(a)(2)(B).[19] NOPB contends that, by designating these treating physicians as non-retained experts, Plaintiff is attempting to circumvent the more stringent disclosure requirements for retained experts.[20] NOPB avers that Plaintiff has the burden of proving that expert reports are not required.[21] NOPB explains that Plaintiff's treating physicians will need to rely on information outside of the scope of their treatment to opine on the cause of Plaintiff's plantar fasciitis, which necessitates expert reports.[22] NOPB argues that because Plaintiff failed to comply with Federal Rule 26(a)(2)(C), the testimony of Dr. Treuting and Dr. Bruno should be excluded.[23]

NOPB contends that, according to the summaries, Dr. Treuting and Dr. Bruno will "rely on records of other experts regarding Plaintiff, on depositions, photographs, diagnostic studies, and will testify consistent with the same. These experts will also rely on Plaintiff's job description, medical illustrations, and models, as well as documents produced in discovery" when opining as to the cause of Plaintiff's plantar fasciitis.[24] NOPB avers that if a non-retained expert relies on sources other than those of a treating physician to causally connect Plaintiff's injuries, an expert report is required.[25] NOPB further argues that Plaintiff has not identified or produced the purported records and documents upon which Dr. Treuting and Dr. Bruno relied on to form their opinions.[26]

---

[19] *Id.* at 8.

[20] *Id.*

[21] *Id.* at 9.

[22] *Id.* at 11.

[23] *Id.* at 12.

[24] *Id.*

[25] *Id.*

[26] *Id.* at 13.

NOPB further argues that Dr. Bruno's opinion on causation should be excluded because the outcome of the opinion was dictated by counsel.[27] NOPB argues that Dr. Bruno's opinion was not developed independently during the normal course of patient treatment.[28] NOPB reiterates that an expert report was required under these circumstances, and because Dr. Bruno failed to produce an expert opinion, the testimony should be limited to that of a fact witness.[29]

Addressing the factors considered in evaluating whether to exclude expert testimony,[30] NOPB argues that Plaintiff was aware of the expert report deadline but failed to provide an expert report.[31] As to the second and third factors, NOPB contends it would be prejudiced if Dr. Treuting and Dr. Bruno are permitted to testify as to causation because Plaintiff has deprived NOPB of the opportunity to review a written report citing support materials, authoritative sources, and the underlying data and reasoning for their opinions.[32] As to the fourth factor, NOPB states that trial is set to begin in eight weeks, and the trial has already been continued once.[33]

Alternatively, NOPB argues that the opinions of Dr. Treuting and Dr. Bruno are unreliable.[34] NOPB contends that there is no evidence that Dr. Treuting and Dr. Bruno considered

---

[27] *Id.* at 14.

[28] *Id.* at 15.

[29] *Id.*

[30] "In evaluating whether to exercise its discretion to exclude expert testimony, Circuit instructs that courts should consider four factors: (1) the importance of the excluded testimony, (2) the explanation of the party for its failure to comply with the court's order, (3) the potential prejudice that would arise from allowing the testimony, and (4) the availability of a continuance to cure such prejudice." *McIntyre v. Hous. Auth. of New Orleans*, 2015 WL 5083503, at *4 (E.D. La. Aug. 27, 2015).

[31] Rec. Doc. 47-1 at 16.

[32] *Id.*

[33] *Id.* at 17.

[34] *Id.*

alternate causes for Plaintiff's idiopathic plantar fasciitis.[35] NOPB avers that Dr. Treuting and Dr. Bruno's causation opinions are based on vague and inaccurate information provided by Plaintiff, and thus, must be excluded as unreliable.[36] NOPB further argues that Dr. Treuting and Dr. Bruno do not establish general or specific causation.[37] NOPB asserts that Dr. Bruno and Dr. Treuting cannot supply unsupported legal conclusions as to the causation of Plaintiff's plantar fasciitis as this question is to be determined by the jury.[38]

### 2.    Plaintiff's Arguments in Opposition to the Motion

In opposition, Plaintiff argues that Federal Rule of Civil Procedure 26(a)(2)(B) does not require Dr. Bruno and Dr. Treuting to provide written expert reports.[39] Plaintiff contends that Rule 26(a)(2)(B) applies to experts "retained or specially employed to provide expert testimony in the case."[40] Plaintiff avers that he properly complied with the requirements of Rule 26(a)(2)(C).[41] According to Plaintiff, other judges in this District have repeatedly rejected NOPB's argument that treating physicians are required to provide written expert reports.[42] Plaintiff contends that the causation opinions were formed in connection with Plaintiff's medical treatment, and the purposes of Rule 26 are satisfied because NOPB could have deposed Plaintiff's treating physicians but chose

---

[35] *Id.* at 21.

[36] *Id.* at 22.

[37] *Id.* at 23.

[38] *Id.* at 25.

[39] Rec. Doc. 54 at 11.

[40] *Id.*

[41] *Id.*

[42] *Id.*

not to do so.[43] Plaintiff avers that he fully disclosed his treating physicians' ultimate causation opinions along with their treatment history, so NOPB is not unfairly prejudiced.[44]

Plaintiff argues that the causation opinions of Dr. Bruno and Dr. Treuting are reliable and admissible under Federal Rule of Evidence 702 and *Daubert*.[45] Plaintiff draws similarities between the instant case and *Lewis v. Illinois Central Railroad Company*,[46] wherein the court rejected identical arguments, finding that it "fails to consider [the podiatrist's] role…as a treating physician, not a retained expert."[47] Plaintiff contends that Dr. Bruno and Dr. Treuting properly relied on Plaintiff's self-reported history in connection with other evidence such as physical examinations and medical testing in reaching their causation opinions.[48]

Plaintiff avers that Dr. Bruno and Dr. Treuting considered and ruled out other sources of Plaintiff's injuries, which is the function of a differential diagnosis.[49] Plaintiff reiterates that a treating physician is not required to comply with the reporting requirements of Rule 26(a)(2)(B).[50] Plaintiff contends that the issues addressed by NOPB can be addressed during cross-examination, not wholesale exclusion.[51]

### 3.    NOPB's Arguments in Further Support of the Motion

---

[43] *Id.* at 13.

[44] *Id.* at 14–15.

[45] *Id.* at 15.

[46] 2023 WL 5312873 at *7 (C.D. Ill. Aug. 16, 2023).

[47] Rec. Doc. 54 at 16.

[48] *Id.* at 18.

[49] *Id.* at 19.

[50] *Id.* at 20.

[51] *Id.*

NOPB reiterates that Dr. Bruno and Dr. Treuting were required to, but did not comply with Rule 26(a)(2)(B).[52] NOPB contends that Dr. Bruno and Dr. Treuting rely on sources outside of their treatment of Plaintiff, which requires compliance with Rule 26(a)(2)(B).[53] NOPB avers that Dr. Bruno's opinion was elicited specifically for purposes of litigation.[54] NOPB argues that Plaintiff's non-compliance was not justified and cannot be remedied by deposition.[55] NOPB states that Plaintiff has not identified the records, depositions, illustrations, and other materials upon which Dr. Bruno and Dr. Treuting will rely.[56]

NOPB contends that Dr. Treuting and Dr. Bruno's causation opinions are unreliable under *Daubert* because they are based on Plaintiff's misrepresentations about his working conditions.[57] NOPB avers that Dr. Treuting and Dr. Bruno did not consider other causes despite being required to do so.[58] NOPB argues that Plaintiff offers no evidence that Dr. Treuting and Dr. Bruno's opinions satisfy *Daubert*.[59] NOPB asserts that Dr. Bruno and Dr. Treuting cannot supply legal conclusions as this usurps the role of the jury.[60]

**B.    *Motion for Summary Judgment***

    **1.    NOPB's Arguments in Support of the Motion**

---

[52] Rec. Doc. 60 at 1.

[53] *Id.* at 2.

[54] *Id.* at 4.

[55] *Id.* at 5.

[56] *Id.*

[57] *Id.*

[58] *Id.* at 7.

[59] *Id.* at 9.

[60] *Id.* at 10.

NOPB seeks summary judgment in its favor if the Court grants NOPB's motions to exclude the medical causation opinions of Plaintiff's treating physicians.[61] If the Court excludes Plaintiff's proposed expert testimony on causation, NOPB contends Plaintiff will be unable to offer any admissible evidence to prove medical causation, an essential element of the FELA claim.[62] NOPB argues that if the medical causation opinions are excluded, Plaintiff cannot prevail under the FELA.[63] NOPB explains that expert testimony is necessary to prove causation in FELA cases.[64] If Plaintiff does not have admissible evidence to prove medical causation, NOPB avers it is entitled to summary judgment in its favor.[65]

### 2.    Plaintiff's Arguments in Opposition to the Motion

In opposition, Plaintiff points out that this suit arises under the FELA, and a plaintiff's FELA claim should be dismissed on summary judgment only "when there is a complete absence of probative facts supporting the plaintiff's position."[66] Plaintiff contends that the Supreme Court has recognized that FELA incorporates a relaxed standard of causation.[67] Plaintiff argues that the causation testimony of his treating physicians is admissible.[68] Plaintiff avers that the testimony of his treating physicians create a reasonable basis for the jury to conclude that Plaintiff's plantar

---

[61] Rec. Doc. 48-1 at 1.

[62] *Id.*

[63] *Id.* at 6.

[64] *Id.* at 7.

[65] *Id.* at 8.

[66] Rec. Doc. 55 at 13 (citing *Barrios v. New Orleans & Gulf Coast Railway Co.,* 2019 WL 6464962 at *4 (E.D. La. Dec. 2, 2019)).

[67] *Id.* at 14.

[68] *Id.* at 17.

fasciitis was caused by work-related walking surfaces.[69] Plaintiff asserts that NOPB's Motion for Summary Judgment should be denied.[70]

### 3.    NOPB's Arguments in Further Support of the Motion

In further support of the motion, NOPB argues that Plaintiff misstates the summary judgment standard and the standard for medical causation.[71] NOPB reiterates that if the Court grants the motion to exclude medical causation opinions from Plaintiff' treating physicians, NOPB is entitled to summary judgment.[72] NOPB avers that Plaintiff fails to identify any other sources of admissible expert testimony to establish medical causation.[73] NOPB contends that Plaintiff cannot rely on medical records to establish a disputed issue of material fact.[74] NOPB argues that this Court should not infer causation.[75] NOPB asserts that the motion for summary judgment should be granted.[76]

### III. Law and Analysis

NOPB moves to exclude the testimony of Plaintiff's treating physicians, Dr. Bruno and Dr. Treuting, on the basis that they did not submit expert reports as required by Rule 26(a)(2)(B). Although the physicians provided summaries of their proposed testimony, NOPB maintains that Rule 26(a)(2)(B) applies because the opinions offered are derived from sources beyond the

---

[69] *Id.* at 20.

[70] *Id.*

[71] Rec. Doc. 61 at 1–2.

[72] *Id.* at 2.

[73] *Id.* at 3.

[74] *Id.* at 4.

[75] *Id.*

[76] *Id.* at 7.

physicians' treatment of Plaintiff. Alternatively, NOPB contends Dr. Treuting and Dr. Bruno's causation opinions are unreliable under *Daubert* because they are based on Plaintiff's misrepresentations about his working conditions, and Dr. Treuting and Dr. Bruno did not consider other causes despite being required to do so. NOPB also seeks summary judgment in its favor contingent upon the exclusion of Dr. Bruno and Dr. Treuting's causation opinions.

## A.    *Expert Report Requirement*

Rule 26(a)(2) governs the disclosure of expert testimony. An expert that is retained by a party for purposes of litigation is required to provide an expert report pursuant to Rule 26(a)(2)(B).[77] Prior to 2010, non-retained experts, such as treating physicians, were exempt from Rule 26's expert reporting requirements.[78] In 2010, Rule 26(a)(2)(C) was added, which provides a less stringent disclosure requirement for non-retained experts, such as treating physicians.[79] Rule 26(a)(2)(C) requires that a party provide a written disclosure for a non-retained expert stating: "(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify."[80] A Rule 26(a)(2)(C) disclosure "need not be extensive," but must include "'an abstract, abridgement, or compendium of the opinion *and* facts supporting the opinion.'"[81]

Although a Rule 26(a)(2)(C) summary disclosure generally suffices for a treating

---

[77] *See* Fed. R. Civ. P. 26(a)(2)(B).

[78] *Tucker v. United States*, 2019 WL 4198254, at *2 (E.D. La. Sept. 4, 2019) (collecting cases).

[79] *Id.*

[80] Fed. R. Civ. P. 26(a)(2)(C).

[81] *Causey v. State Farm Mut. Auto. Ins. Co.*, 2018 WL 2234749, at *2 (E.D. La. May 16, 2018) (quoting *Rea v. Wis. Coach Lines, Inc.*, 2014 WL 4981803, at *5 (E.D. La. Oct. 3, 2014)) (internal quotation marks omitted; emphasis in original).

physician, a more comprehensive report that complies with Rule 26(a)(2)(B) is required when such a witness intends to render opinions based on scientific, technical, or other specialized knowledge.[82] Further, "where physicians' testimony is prepared in anticipation of litigation by the attorney or relies on sources other than those utilized in treatment, courts have found that the treating physician acts more like an expert and must submit a report under Rule 26(a)(2)(B)."[83]

NOPB argues that the physicians' causation opinions were developed outside of the scope of treatment and therefore required written expert reports under Rule 26(a)(2)(B). While the Fifth Circuit has not directly addressed this issue, other circuits have held someone may be a witness not required to produce a report as to portions of his testimony and simultaneously deemed a retained or specially employed expert who is subject to Rule 26(a)(2)(B) as to other portions.

For example, in *Goodman v. Staples The Office Superstore, LLC,* the Ninth Circuit addressed a situation in which a plaintiff in a personal injury case "retained a number of her treating physicians to render expert testimony beyond the scope of the treatment rendered."[84] In forming their additional opinions, the physicians "reviewed information provided by [plaintiff's] attorney that they hadn't reviewed during the course of treatment."[85] The appellate court held that "those doctors fell outside the scope of the 'treating physician exception' insofar as their additional opinions are concerned," and that therefore "Rule 26(a)(2)(B) required disclosure of expert reports."[38]

---

[82] *See Hooks v. Nationwide Housing Sys., LLC*, 2016 WL 3667134, at *3 (E.D. La. July 11, 2016).

[83] *Id.*

[84]   644 F.3d 817, 826 (9th Cir. 2011)

[85] *Id.*

Similarly, in *Meyers v. National Railroad Passenger Corp. (Amtrak),*[86] the Seventh Circuit, assessing whether Rule 26 required an expert report, looked to whether the opinions at issue were developed in the course of a physician's treatment. The court held that "a treating physician who is offered to provide expert testimony as to the cause of the plaintiff's injury, but who did not make that determination in the course of providing treatment, should be deemed to be one 'retained or specially employed to provide expert testimony in the case' and thus is required to submit an expert report."[87]

Finally, in *Fielden v. CSX Transportation, Inc.,*[88] the Sixth Circuit explained that courts have not required a report when a treating physician testifies "within a permissive core on issues pertaining to treatment."[42] In *Fielden,* the Sixth Circuit held that the treating physician at issue did not have to produce a report where evidence showed that the physician formed his opinion during the course of treatment, rather than at the request of counsel.[89]

NOPB contends that the physicians relied on deposition testimony, photographs, diagnostic studies, job descriptions, and medical illustrations, and that Plaintiff's counsel affirmatively solicited a causation opinion by email. The Court addresses each category in turn.

Review of diagnostic studies is plainly within the scope of medical treatment and does not convert a treating physician into a retained expert. Likewise, consideration of medical illustrations to explain anatomical or biomechanical concepts is consistent with clinical practice and does not, by itself, indicate that an opinion was developed for litigation. Consideration of a patient's job

---

[86] 619 F.3d 729 (7th Cir. 2010).

[87] *Id.* at 734–35.

[88] 482 F.3d 866 (6th Cir. 2007).

[89] *Id.* at 869.

duties and work conditions is also a routine component of medical assessment, particularly where the alleged injury is repetitive or occupational in nature. A treating physician does not exceed the scope of treatment by merely evaluating how a patient's work activities may relate to a diagnosed condition.

By contrast, reliance on deposition testimony or photographs prepared for litigation may support NOPB's argument if such materials formed the basis for a causation opinion that was not previously reached during treatment. NOPB also argues that Plaintiff's counsel emailed the treating physicians requesting an opinion on causation. While solicitation by counsel is a relevant factor, it is not dispositive. A treating physician does not become a retained expert merely because counsel asks the physician to articulate or confirm an opinion already formed during treatment. The key question remains whether the physicians' causation opinion existed independently of counsel's request.

NOPB also points out that Plaintiff has not identified the depositions or illustrations upon which Dr. Bruno and Dr. Treuting will rely. The Court agrees that Plaintiff may not elicit opinions that were newly formed, materially expanded, or solely derived from litigation materials, including deposition testimony or counsel-supplied documents reviewed after treatment concluded. As such, the treating physicians may testify regarding causation opinions that were formed during and based upon their treatment of Plaintiff.[90] They may not offer opinions that depend on post-treatment review of deposition testimony, litigation photographs, or other materials outside of the scope of their medical care.

## B.    Reliability

---

[90] *Goodman,* 644 F.3d at 826 (holding that a treating physician does not have to produce an expert report "to the extent that his opinions were formed during the course of treatment".).

Ultimately, a party seeking to introduce expert testimony must show that the witness is qualified by education, training, or experience to give relevant and reliable testimony and that (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.[91]

NOPB first argues that Plaintiff's treating physicians may not testify as to causation. Treating physicians routinely testify regarding the cause of a patient's condition where such opinions arise from diagnosis and treatment. There is no categorical bar preventing treating physicians from offering causation testimony, provided the opinions are based on the physician's personal knowledge and medical expertise. Accordingly, the Court rejects NOPB's argument.

NOPB further argues that Dr. Treuting and Dr. Bruno's causation opinions are unreliable under *Daubert* because they are based on Plaintiff's misrepresentations about his working conditions.[92] However, "as a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration."[93] Such disputes are appropriately addressed through cross-examination, impeachment, and the presentation of contrary evidence, not exclusion.

NOPB also argues that Dr. Treuting and Dr. Bruno did not consider other causes despite being required to do so. In opposition, Plaintiff argues that the treating physicians did consider alternative causes. To offer reliable causation testimony, "medical causation experts must have

---

[91] Federal Rules of Evidence, Rule 702; *Smith v. Goodyear Tire & Rubber Co.*, 495 F.3d 224, 227 (5th Cir. 2007).

[92] *Id.*

[93] *Viterbo v. Dow Chemical Co*., 826 F.2d 420, 422 (5th Cir. 1987).

*considered and excluded* other possible causes of injury."[94] This requirement "does *not* necessitate an exhaustive search that forces an expert to 'disprov[e] or discredit[ ] every possible cause other than the one espoused by him,' ... but an expert must be aware of the plaintiff's pertinent medical history."[95] Testimony should only be excluded when "[the] expert utterly fails to consider alternative causes or fails to explain why the opinion remains sound in light of alternative causes suggested by the opposing party."[96]

The absence of an exhaustive written analysis of alternative causes does not, by itself, render such testimony inadmissible. Here, the record reflects that Plaintiff's treating physicians evaluated Plaintiff's symptoms, medical history, diagnostic studies, and reported work activities in diagnosing and treating his condition. NOPB has not shown that the physicians ignored obvious alternative causes or relied on a methodology so flawed as to be unreliable. Rather, NOPB's argument focuses on the physicians' alleged failure to explicitly address other potential contributing factors, such as non-work-related activities or pre-existing conditions. Such challenges are properly addressed through cross-examination and the presentation of contrary medical evidence. The jury may consider whether the physicians adequately accounted for other potential causes when determining the weight to give their opinions.

## C.    *Summary Judgment*

Summary judgment is appropriate when the pleadings, discovery, and affidavits demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as

---

[94] *McNabney v. Lab Corp. of Am.*, 153 F. App'x 293, 295 (5th Cir. 2005).

[95] *Id.* (quoting *Viterbo*, 826 F.2d at 424).

[96] *Cross v. Forest Labs.*, No. 05-CV-00170, 2015 WL 728511, at *2 (S.D. Miss. Feb. 19, 2015) (citing *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 265 (4th Cir. 1999)).

a matter of law."[97] To decide whether a genuine dispute as to any material fact exists, the court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[98] All reasonable inferences are drawn in favor of the nonmoving party.[99] Yet "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[100] If the entire record "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of fact exists and, consequently, the moving party is entitled to judgment as a matter of law.[101] The nonmoving party may not rest upon the pleadings.[102] Instead, the nonmoving party must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[103]

NOPB seeks summary judgment in its favor if the Court excludes the causation testimony of Dr. Treuting and Dr. Bruno. For the reasons stated herein, the Court denies NOPB's request to exclude the testimony of Dr. Treuting and Dr. Bruno. As such, because material issues remain in dispute, the Court denies NOPB's motion for summary judgment.

---

[97] Fed. R. Civ. P. 56(a); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[98] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

[99] *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Reeves*, 530 U.S. at 150).

[100] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[101] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Ariz. v. Cites Serv. Co.*, 391 U.S. 253, 289 (1968)).

[102] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

[103] *See id.*; *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

## IV. Conclusion

For the foregoing reasons, the Court finds that Dr. Treuting and Dr. Bruno are not categorically barred from offering causation testimony and that expert reports under Rule 26(a)(2)(B) were not required for opinions formed during the course of treatment. The Court further finds that the physicians' causation opinions are sufficiency reliable under Federal Rule 702 and *Daubert*. However, Plaintiff may not elicit testimony reflecting opinions that were newly formed or materially expanded in anticipation of litigation, including opinions based on post-treatment review of deposition testimony or other litigation-generated materials.

Accordingly,

**IT IS HEREBY ORDERED** that NOPB's Motion in Limine to Exclude Medical Causation Testimony[104] is **GRANTED IN PART** and **DENIED IN PART**. The motion is **DENIED** to the extent is seeks exclusion of Dr. Treuting and Dr. Bruno's causation opinions. The motion is **GRANTED** as to the exclusion of any opinions that were newly formed or materially expanded in anticipation of litigation, including opinions based on post-treatment review of deposition testimony or other litigation-generated materials.

**IT IS FURTHER ORDERED** that NOPB's Motion for Summary Judgment[105] is **DENIED**.

**NEW ORLEANS, LOUISIANA**, this 15th  day of January, 2026.

_Nannette Jolivette Brown_
_____
**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[104] Rec. Doc. 47.

[105] Rec. Doc. 48.